Filed 10/29/25  P. v. Gipson CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MYLES GIPSON,<br><br>        Defendant and Appellant. | A169739<br><br>(San Mateo County<br>Super. Ct. No. 21-SF-007332-A) |

Pursuant to a plea agreement, defendant Myles Gipson pleaded no contest to one count of first degree residential burglary and was sentenced to four years in prison.  Defendant's sole claim on appeal is that the trial court abused its discretion in denying his *Romero*[1] motion to dismiss a prior strike conviction.  Finding no abuse of discretion, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

*Charges*

In April 2022, the San Mateo District Attorney filed an information charging defendant with one count of first degree burglary (Pen. Code,[2] § 460, subd. (a); count 1) and five counts of second degree burglary (§ 460, subd. (b);

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[2] Undesignated statutory references are to the Penal Code.

1

counts 2 through 6). All offenses allegedly occurred on October 19, 2018. It was alleged that defendant had previously been convicted of burglary (§ 459) in 1991 and 2007 and lewd and lascivious conduct with a child (§ 288) in 2001, and that all three of these prior felony convictions qualified as strikes under the Three Strikes law (§ 667, subds. (b)-(j)) and as serious felony convictions under section 667, subdivision (a)(1).

*Plea Agreement*

On August 10, 2023, the parties reached a plea agreement under which defendant agreed to enter a plea of no contest to count 1 (first degree burglary) and admit one prior serious or violent felony conviction for a maximum prison term of four years and reserving the right to seek a lesser term by filing a *Romero* motion to dismiss the admitted prior strike conviction. The trial court accepted defendant's plea to count 1 on these conditions and found he suffered a prior burglary conviction; the remaining counts and allegations were dismissed.

*Probation Report*

On September 29, 2023, the Probation Officer's Report and Recommendation (probation report) was received by the court. It was reported that defendant was a 65-year-old resident of Ashland, Oregon, and he was required to register as a sex offender due to his conviction in 2001 of lewd and lascivious acts with a child under age 14. The circumstances of the 2001 conviction were described in detail in the probation report. Defendant had "served numerous prison terms" and had numerous probation and parole violations. He had prior convictions for burglary, embezzlement, petty theft, first degree burglary, commercial burglary, receiving stolen property, possession of burglary tools, driving on a suspended license, obstructing a peace officer, hit and run causing property damage, evading a peace officer,

2

possession of a stolen vehicle, vehicle theft, and failure to register as a sex offender. Defendant's most recent offenses were another burglary committed in October 2018, vehicle theft in June 2019, and misdemeanor theft in May 2023. He was on probation when the current offense was committed (in October 2018), and his prior performance on probation, post release community supervision (PRCS), and parole was unsatisfactory.

Defendant reported to probation that "he had a 'good childhood,' and he was raised in a 'creative, loving, and caring family,' " although his parents separated when he was two and he had no relationship with his father. When he was 13 years old, defendant participated in Big Brothers of America, and his "big brother" in the program sexually molested him. As a result, defendant began drinking alcohol "in an attempt to 'numb' his feelings." He reported he was diagnosed with dyslexia in elementary school, and he graduated from high school, attended college (studying drafting and architecture), hazard waste training, scuba certification training, and real estate school.

Defendant reported that he began drinking when he was 14 years old, and he started using cocaine when he was 31 years old and became addicted. He said his addiction caused his criminal behavior as he would commit crimes for money to pay for his drug use. In the 1990's, defendant was in substance abuse treatment a few times but relapsed "due to the 'feeling of low self-worth.' " He reported that he had been sober for five years.

The current criminal matter involved five car break-ins in a parking garage. Defendant provided a written statement on the present offense that read, " 'I've had problems with abuse and stole to support habit.' " He declined to talk about the offense although he "stated he believed that the victims were lying about what was stolen from their vehicles and he believed

3

that one of the victims was trying to 'run an insurance scam.' " Probation found that "defendant has failed to take accountability for his actions" related to the current offense, "minimized his criminal history," and "continued to commit new law violations as indicated by his recent misdemeanor conviction on May 11, 2023 in Oregon for a theft-related offense." It noted defendant had "been given numerous opportunities to rehabilitate himself but failed to make positive change in his life."

*Defendant's Sentencing Memorandum*

On November 29, 2023, defendant filed a sentencing memorandum, asking the court to dismiss his prior strike conviction under section 1385 (*Romero* motion) and to grant him two years of supervised probation. Defendant acknowledged he "has accumulated a substantial criminal history" and his prior convictions "are undoubtedly very serious," but he asserted his criminal history "consisted almost exclusively of offenses committed in pursuit of his addictions" and, in recent years, he "has made tremendous strides towards overcoming those addictions." Defendant understood "that he is asking a lot from this court, but striking his strike will afford this court a great deal of discretion in crafting a sentence that will acknowledge the seriousness of [his] conduct, while also recognizing the massive improvements he has made in his life." He attached documentary evidence showing (1) he successfully completed PRCS in Marin County in July 2022, (2) he attended many AA meetings in 2021 and 2022, and (3) as of July 2023, a "Recovery Coach/Care Manager" found defendant had "met and surpassed all expectations relating to the goals of [his] personal recovery plan."

*Sentencing Hearings*

At a hearing on December 6, 2023, the prosecution argued the *Romero* motion should be denied and asked for a four-year sentence (the maximum

4

permitted under the plea agreement), based on defendant's criminal history and "his lack of remorse as demonstrated in his probation interview."

Defense counsel pointed out that defendant's "prior strikes are much older than five years," and argued, "There's multiple references in the probation report to my client having been sexually abused as a child, experiencing learning disabilities. [¶] The fact that he doesn't believe that those impact him to this day does not mean those are not things that should be taken into account."

The trial court continued the sentencing hearing, stating, "This is a bit of a close call" and the court wanted to "think about it for a little while."

At the continued sentencing hearing on January 25, 2024, defense counsel again stated that defendant was sexually abused as a child and then argued that defendant "has made a lot of progress" and "going back to prison at this point would disrupt that progress, and I don't think it will serve public good."

*Ruling on the* Romero *Motion and Sentencing*

The trial court denied defendant's motion to dismiss his prior strike conviction. The court explained, "I have given a lot of thought to this case because I realize Mr. Gipson is, you know, is an old man these days, or at least is getting to that age. The difficulty that I have with giving him—with granting Romero is several things. [¶] First of all, the criminal record goes back 34 years from 1989 all the way up to 2023. It looks like according to the Information there were three prior strikes and two of them, I believe, were stricken. And I believe the People took it out of three-strikes category?" (The prosecutor confirmed this.) ". . . So he has already received a strong benefit. I also counted, based on the probation report, 16 felonies and 7

5

misdemeanors, and so there is just a continuous period of criminality that doesn't seem to have abated.

"What really tipped the balance for me, and making my decision was the fact that after the Information was filed in this case, after he had been arraigned in Superior Court, he committed another crime; although, it was just a misdemeanor, he committed a crime in May of 2023, when he should have been on his best behavior.

"I would note that, additionally, there's—although, he's done well in PRCS this time, he has previously violated parole according to the probation report. And as the probation officer said, he has numerous prior convictions; he served prior terms in prison. He was on probation when the offense was committed. His prior performance on probation, PRCS, and parole was unsatisfactory.

"And I would also note that one of the strikes was a serious felony. It was a 288, but it involved very aggressive conduct involving lewd acts on a nine-year-old girl. So I do find that he falls within the spirit of the three strikes law, and I don't feel that Romero should be granted in this case. I think it is in the interest of justice to not allow that."

The trial court sentenced defendant to four years in prison, consisting of the low term for the burglary count of conviction, doubled on account of defendant's prior strike.

## DISCUSSION

The Three Strikes law "establishes a sentencing norm"; "it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th

367, 378 (*Carmony*).)  A trial court may dismiss a prior serious and/or violent felony conviction under the Three Strikes law on its own motion "in furtherance of justice."  (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at 504.)

In ruling on a *Romero* motion, a trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's sentencing] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances.  For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation] or where the court considered impermissible factors in declining to dismiss [citation].  Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce [ ] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case.  [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations.  [Citation.]  Where the record is silent [citation] or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation].  Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within

7

which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

"[A]lthough a trial court is required to state on the record its reasons for striking a prior conviction (§ 1385, subd. (a)), there is no similar statutory requirement of an on-the-record statement of reasons when a court declines to strike a prior." (*In re Coley* (2012) 55 Cal.4th 524, 560.) In "the absence of an affirmative record to the contrary," we presume the trial court considered the relevant factors in ruling on a *Romero* motion. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).)

Defendant contends the trial court in this case abused its discretion in denying his *Romero* motion. We find no abuse of discretion.

Defendant first argues that his drug addiction brought him outside the spirit of the Three Strikes law. But this is not such an extraordinary case that no reasonable court could disagree with his position. (See, e.g., *People v. Reyes* (1987) 195 Cal.App.3d 957, 963 [observing that where a defendant has failed to deal with drug-addiction "despite repeated opportunities" and "the substance abuse problem is a substantial factor in the commission of crimes," this circumstance may be an aggravating, rather than mitigating, factor].) Here, the trial court expressly found defendant fell "within the spirit of the three strikes law," noting his criminal history—which included 16 felony convictions—demonstrated "a continuous period of criminality that doesn't seem to have abated"; that he was on probation when he committed the current offense; that he committed another crime *after* this offense (indeed, he had two separate post-offense convictions—one for vehicle theft in 2019

8

and another for theft in 2023); that his prior performance on probation, PRCS, and parole was unsatisfactory; and that his prior convictions included a serious felony. Under the Three Strikes sentencing scheme, defendant received a four-year sentence, the low term of two years doubled. We cannot say this is an arbitrary, capricious, or patently absurd result.

Defendant claims, however, that the "record is at least ambiguous as to whether the court considered" his drug addiction, asserting "there was no indication the court understood that it must consider the mitigating evidence." But we presume the trial court considered the relevant factors unless the record affirmatively demonstrates court misunderstanding. (*Myers*, *supra*, 69 Cal.App.4th at p. 310.) The mere fact that the court discussed certain factors "does not mean that it considered only" those factors. (*Ibid*.) Defendant fails to point to anything in the record showing the trial court misunderstood the law. (See *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988 [to establish abuse of discretion in sentencing, the appellant " 'must "affirmatively demonstrate that the trial court misunderstood its sentencing discretion" ' "].) Defendant's reliance on *People v. Ochoa* (2020) 53 Cal.App.5th 841 is misplaced. In that case, the appellate court found the sentencing transcript "suggest[ed] the court erroneously believed, just as the People have argued in this appeal, that . . . the statutory requirement to consider [certain] mitigating factors" was eliminated. (*Id.* at p. 853.) There is no similar evidence in the record suggesting the trial court in this case applied an erroneous legal standard in deciding the *Romero* motion.

Next, defendant argues the court abused its discretion in declining to dismiss his prior strike conviction because his current offense is not violent and did not involve threats; only one of his prior convictions was violent; his

9

convictions were old; and "the prior strike was connected to childhood trauma." We reiterate, " '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. . . . Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Defendant has a long criminal history, he was on probation when he committed the current offense, he committed additional offenses after committing this offense, and the trial court sentenced him to four years in prison. This is not one of those "even more extraordinary" (*ibid*.) cases that requires dismissal of the prior strike conviction as a matter of law.

We also reject defendant's argument that the record is ambiguous as to whether the trial court considered the mitigating evidence that his prior strike conviction may have been connected to childhood trauma. The record does not affirmatively demonstrate court error. (See *Myers*, *supra*, 69 Cal.App.4th at p. 310.)[3]

Finally, defendant argues the trial court abused its discretion by failing to apply section 1385, subdivision (c) (section 1385(c)), in deciding whether to dismiss his prior strike conviction. Section 1385(c) provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so,"

---

[3] Because we are not disposing of defendant's appellate claims based on forfeiture, we do not consider his alternative argument that defense counsel's failure to raise certain objections to the sentence was ineffective assistance of counsel.

10

and instructs the court to "consider and afford great weight to evidence offered by the defendant to prove . . . [specified] mitigating circumstances." Among the specified mitigating circumstances that "weigh[ ] greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety" are the following, which defendant claims apply: "[t]he current offense is connected to prior victimization or childhood trauma" (§ 1385(c)(2)(E); "[t]he current offense is not a violent felony as defined in subdivision (c) of Section 667.5" (*id.*, (c)(2)(F); and "[t]he enhancement is based on a prior conviction that is over five years old" (*id.*, (c)(2)(H)).

Section 1385(c), by its terms, applies only when a trial court is considering whether to dismiss "an enhancement." We have held that section 1385(c) does not apply to a *Romero* motion to dismiss a prior strike conviction because a sentence under the Three Strikes law is not an enhancement. (*People v. Dain* (2025) __ Cal.App.5th __ [2025 WL 2923229] (*Dain*).)[4] We are not the only court to have reached this conclusion. (See *People v. Dowdy*

_____

[4] In his appellate briefing, defendant cites our prior opinion, *People v. Dain* (2024) 99 Cal.App.5th 399, 411 (in which we held that section 1385(c) does not apply to a trial court's decision whether to grant a *Romero* motion to dismiss a strike conviction), and he argues it was incorrectly decided. Shortly after briefing was completed in the present appeal, the California Supreme Court reversed our decision and remanded in *People v. Dain* (2025) 18 Cal.5th 246, 253. The Supreme Court, however, limited its review "to the following question: 'Did the Court of Appeal err in remanding the case with directions to reinstate the strike finding and to resentence defendant as a person who has suffered a prior strike conviction under the Three Strikes Law?'" (*Id.* at p. 255.) (Thus, our high court did not consider the question whether section 1385(c) applies to *Romero* motions seeking to dismiss prior strike convictions under the Three Strikes law.) We have since issued a new opinion, *Dain, supra,* __ Cal.App.5th __ [2025 WL 2923229] in which we hold that section 1385(c), by its terms, does not apply to a trial court's decision whether to grant a *Romero* motion to dismiss a prior strike conviction.

(2024) 107 Cal.App.5th 1, 9 ["It is well established . . . that section 1385, subdivision (c) applies by its terms to a sentence 'enhancement,' but not to a sentence derived from the alternative sentencing scheme of the Three Strikes law."]; *People v. Olay* (2023) 98 Cal.App.5th 60, 67 ["section 1385, subdivision (c) does not apply to the Three Strikes law"; "If the Legislature had wanted section 1385, subdivision (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so"]; (*People v. Burke* (2023) 89 Cal.App.5th 237, 243–244 ["The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement.  We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law"]; accord *People v. McDowell* (2024) 99 Cal.App.5th 1147, 1154 ["By its terms, section 1385(c) applies only to an 'enhancement' "].)

Defendant argues these cases are wrongly decided, and the word "enhancement" as used in section 1385(c) is ambiguous and should be read to encompass the Three Strikes law's alternative sentencing scheme.  We are not persuaded.  As Division Five of this court observed in *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1338: "Our appellate courts have routinely rejected the argument that the 'Three Strikes' law constitutes an enhancement under section 1385(c), concluding it is 'well established' that the law is instead 'an alternative sentencing scheme for the current offense.' [Citations.]  In reaching this conclusion, these courts have 'presume[d] the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law.  [Citation.] The Legislature did not otherwise define the word "enhancement" in section 1385.' [Citations.]  Yet, '[i]f the Legislature had wanted section 1385,

subdivision (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so.' "

Defendant offers no compelling reason for us to depart from our conclusion in *Dain*. Accordingly, we reject defendant's argument that section 1385(c) applies to his *Romero* motion.

## DISPOSITION

The judgment is affirmed.

_____

Miller, J.

WE CONCUR:

_____

Stewart, P. J.

_____

Richman, J.

A169739, *People v. Gipson*

13